**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
_____
                               :
MICHAEL DIRAGO,                :
                               :      Civil Action No. 03-5943 (RBK)
              Petitioner,      :
                               :
         v.                    :
                               :            OPINION
ROY HENDRICKS, et al.,         :
                               :
              Respondents.     :
_____:
```

**APPEARANCES:**

>       MICHAEL DIRAGO, Petitioner <u>Pro</u> <u>Se</u>
>       SBI #769281B/235595
>       South Woods State Prison
>       215 Burlington Road South
>       Bridgeton, New Jersey 08302
>
>       LORA DAFNA BENDER GLICK, ESQ.
>       Office of the N.J. Attorney General
>       Division of Criminal Justice
>       Richard J. Hughes Justice Complex
>       P.O. Box 086
>       Trenton, New Jersey 08625-0086
>       Attorneys for Respondents

**KUGLER, District Judge**

This matter is before the Court on petitioner Michael Dirago's application for habeas corpus relief under 28 U.S.C. § 2254. For the reasons stated below, the petition for habeas relief will be denied for failure to make a substantial showing of a federal statutory or constitutional deprivation.

I.   <u>BACKGROUND</u>

A.   <u>Procedural History</u>

Petitioner, Michael Dirago ("Dirago"), is presently confined at the South Woods State Prison in Bridgeton, New Jersey, serving an aggregate sentence of life imprisonment with 30 years of parole ineligibility.

Dirago was convicted by a jury in the Superior Court of New Jersey, Law Division, Burlington County on or about June 7, 1991 on charges of first degree murder, second degree possession of a weapon for an unlawful purpose, and unlawful possession of a weapon without a permit.  He appealed his final judgment of conviction to the New Jersey Appellate Division.  In an unpublished <u>per curiam</u> Opinion decided October 13, 1994, the Appellate Division affirmed the conviction on the murder count, merged the possession of a weapon for an unlawful purpose count into the murder count for sentencing, and dismissed the third count for unlawful possession of a weapon without a permit. (Appellate Division Opinion, decided October 13, 1994, RE 21[1]). The New Jersey Supreme Court denied certification on December 18, 1994.  (RE 18).

Sometime thereafter, on or about May 26, 1996, Dirago filed a state post-conviction relief petition ("PCR"), alleging eight

---

[1]  "RE" reflects the respondents' appendix or exhibits with respect to the relevant state court record submitted with their answer to the petition.

separate claims of ineffective assistance of trial counsel. An oral hearing was held before the Honorable Marvin E. Schlosser, J.S.C., on June 29, 2000.  Judge Schlosser denied seven of petitioner's claims in a written opinion filed on August 3, 2000. He reserved judgment, however, on the remaining ground regarding counsel's failure to object to the jury <u>voir</u> <u>dire</u>.  An evidentiary hearing was ordered on this limited issue, which was eventually held on December 20, 2001.[2]  Judge Schlosser granted post-conviction relief in a written opinion entered on April 8, 2002, vacating Dirago's murder conviction and remanding the case for a new trial.  (RE11).  The State appealed, and on November 25, 2002, the Appellate Division filed a <u>per</u> <u>curiam</u> Opinion reversing Judge Schlosser's April 8, 2002 decision.  The New Jersey Supreme Court denied certification on March 28, 2003.

Dirago filed this federal habeas petition on or about December 8, 2003.  The State responded on May 17, 2004, and provided this Court with the relevant state court record.

B.  <u>Factual Background</u>

The facts of this case were recounted below and this Court, affording the state court's factual determinations the

---

[2]  The PCR petition was dismissed on February 23, 2001 based on the difficulty in obtaining trial counsel's testimony.  It was reinstated on September 1, 2001 when counsel certified to the court that he was willing to testify at a PCR evidentiary hearing.

appropriate deference under 28 U.S.C. § 2254(e)(1), will simply

reproduce the New Jersey Appellate Division's factual recitation:

> Defendant's conviction for murder rested upon the death of
> his former girlfriend, Yvonne Davi, whose body was
> discovered on December 30, 1985 in a wooded area in Bristol
> Township, Bucks County, Pennsylvania.  The State's theory
> was that defendant murdered her to preclude her going to the
> authorities with information about his trafficking in
> illegal drugs.
>
> Ms. Davi had a tempestuous relationship with defendant.  At
> one point she arrived home with a black eye and no
> pocketbook, which he evidently appropriated.  After an
> argument on another occasion, she found one of her tires
> vandalized.
>
> There was testimony at trial that, after Ms. Davi severed
> the relationship, defendant began a campaign to persuade her
> to go out with him at least one more time.  Her roommates,
> at least one of whom advised her against having anything
> further to do with defendant, testified that he would send
> flowers and love letters.  Ms. Davi finally agreed to go out
> with defendant on April 16, 1985, which was the last day she
> was seen alive.
>
> The two went to the Fox Hunt Pub where, at about 8:30 p.m.,
> Ms. Davi called her roommates, told them where she was and
> that she would be home in approximately twenty minutes.
> Defendant, however, prevailed upon Ms. Davi to go with him
> to a New York City bar called Tea Bags, where they met
> Richard Ferrante.  According to Ferrante,[3] defendant earlier
> enlisted him in the plot to kill Ms. Davi; Ferrante agreed
> because he feared she was aware of his own illegal drug and
> burglary activities.  Ferrante testified the two convinced
> Ms. Davi to accompany them to Atlantic City.  According to
> Ferrante, this was a pretext he and defendant agreed upon in
> advance.  Their purpose was to lure Ms. Davi to an isolated
> spot to murder her.  When it became apparent to Ms. Davi,
> during the course of the journey, that they were not headed

---

[3]  Ferrante was also indicted for Ms. Davi's murder but his
case was severed for purposes of trial.  During Dirago's trial,
the State offered full use immunity to Ferrante in exchange for
Ferrante's presumably truthful testimony against Dirago.  All
charges against Ferrante were ultimately dropped.

toward Atlantic City, she protested.  A struggle ensued and Dirago shot and killed her.  Ferrante testified they disposed of her body shortly after they crossed the Burlington-Bristol Bridge into Pennsylvania.

When Ms. Davi did not return to her apartment following her date on April 16, 1985, her roommates notified the police. Among the information they provided to the police was a detailed description of the clothing Ms. Davi wore when she left the apartment.

Defendant was interviewed as part of the missing person's investigation which followed.  He told the investigating officer that he and Ms. Davi had dinner, went to the Fox Hunt Pub and then to Tea Bags.  According to Dirago, Ms. Davi angrily stormed out of Tea Bags when he wanted to stay longer.  He said he drove around the area, was unable to locate her and returned to Tea Bags.  He said he never saw her again.  Despite the earlier love letters and flowers he had lavished on her, he never inquired whether Ms. Davi made it home safely that evening and never responded to messages left on his answering machine by Ms. Davi's roommates who were looking for her.

The vehicle which Dirago used on the night in question was eventually located in an auto yard.  An unspent bullet was found on the driver's side of the floor.  The vehicle was taken to the police laboratory for further investigation; no fingerprints or traces of blood were found.

Although Ms. Davi's remains were discovered in December of 1985, she was not identified until May of 1986.  The clothing on her remains matched the description provided by her roommates of what she wore when she departed on April 16, 1985.  In one of the pockets of her jeans was the key to the house she shared with her roommates.

During trial, testimony was elicited that Dirago was involved in drug use and drug trafficking.  There was also testimony by Roger Kleber that Dirago offered assistance in disposing of any witnesses who could implicate Kleber in drug trafficking.  John Hall, who was, at one point, an inmate in the same jail as Dirago, testified that Dirago told him of the murder of Yvonne Davi and that he (Dirago) planned to murder Kleber as well.

(Appellate Division Opinion, decided October 13, 1994, at pp. 2-4, RE21).

## II.   <u>CLAIMS FOR HABEAS RELIEF</u>

Dirago raises the following claims in his federal habeas petition: (1) petitioner should receive an evidentiary hearing; (2) the entire jury selection process was flawed and the trial court committed reversible error by not conducting a thorough <u>voir</u> <u>dire</u>, in violation of petitioner's right to a fair and impartial jury under the Sixth and Fourteenth Amendments; (3) trial court violated petitioner's Sixth and Fourteenth Amendment rights by arbitrarily depriving petitioner of his right to jury selection by exercising challenges for cause and peremptory challenges; (4) petitioner was denied his right to effective assistance of trial counsel; (5) petitioner was denied his right to effective assistance of appellate counsel; and (6) the cumulative effect of the alleged trial errors deprived petitioner of due process and his constitutional right to a fair and impartial trial.

The State argues that petitioner's claims are without merit. The State also asserts that several of the claims are unexhausted and/or procedurally defaulted.  To the extent any of the claims asserted by Dirago in this petition were not exhausted in state court, this Court may opt to review such claims, and deny them on the merits pursuant to 28 U.S.C. § 2254(b)(2).  Section

2254(b)(2) provides that "[a]n application for writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." See also Lambert v. Blackwell, 134 F.3d 506, 514-15 (3d Cir. 1997), cert. denied, 532 U.S. 919 (2001)(a district court may deny a petition on the merits, pursuant to 28 U.S.C. § 2254(b)(2), where "it is perfectly clear that an applicant does not raise even a colorable federal claim").

III.   STANDARD GOVERNING REVIEW OF § 2254 CLAIMS

The Court recognizes that a pro se pleading is held to less stringent standards than more formal pleadings drafted by attorneys. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). Thus, a pro se habeas petition should be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Duarte v. Hurley, 43 F. Supp.2d 504, 507 (D.N.J. 1999). Because Dirago is a pro se litigant, the Court will accord his petition the liberal construction intended for pro se petitioners.

Under § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts in habeas matters must give considerable deference to determinations of the state trial and appellate courts. See 28 U.S.C. § 2254(e); Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 122 S.Ct. 269 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir.

1996)(*citing* <u>Parke v. Raley</u>, 506 U.S. 20, 36 (1992)).  Section

2254(d) sets the standard for granting or denying a habeas writ:

> (d)  An application for a writ of habeas corpus on
> behalf of a person in custody pursuant to the judgment
> of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim -
>
>> (1)  resulted in a decision that was contrary to, or
>> involved an unreasonable application of, clearly
>> established Federal law, as determined by the
>> Supreme Court of the United States; or
>>
>> (2)  resulted in a decision that was based on an
>> unreasonable determination of the facts in light
>> of the evidence presented in the State court
>> proceeding.

28 U.S.C. § 2254(d).

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the Supreme

Court explained that subsection (d)(1) involves two clauses or

conditions, one of which must be satisfied before a writ may

issue.  The first clause, or condition, is referred to as the

"contrary to" clause.  The second condition is the "unreasonable

application" clause.  <u>Williams</u>, 529 U.S. at 412-13.  In the

"contrary to" clause, "a federal court may grant the writ if the

state arrives at a conclusion opposite to that reached by [the

Supreme] Court on a question of law or if the state court decides

a case differently than [the Supreme] Court has on a set of

materially indistinguishable facts."  <u>Id</u>.  Under the

"unreasonable application" clause, a federal court may grant the

writ if "the state court identifies the correct governing legal

principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [the petitioner's] case." Id. at 413.  Habeas relief may not be granted under the "unreasonable application" condition unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief.  Id. at 411.  See also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir. 1999), cert. denied sub nom Matteo v. Brennan, 528 U.S. 824 (1999).

Consonant with Williams, the Third Circuit has held that § 2254(d)(1) requires a federal habeas court to make a two step inquiry of the petitioner's claims.  First, the court must examine the claims under the "contrary to" provision, identify the applicable Supreme Court precedent and determine whether it resolves petitioner's claims.  See Werts, 228 F.3d at 196-97; Matteo, 171 F.3d at 888-891.  If the federal court determines that the state court's decision was not "contrary to" applicable Supreme Court precedent, then the court takes the second step of the analysis under § 2254(d)(1), which is whether the state court unreasonably applied the Supreme Court precedent in reaching its decision.  Werts, 228 F.3d at 197.

This second step requires more than a disagreement with the state court's ruling because the Supreme Court would have reached a different result.  <u>Id</u>.  AEDPA prohibits such *de novo* review.  Rather, the federal habeas court must determine whether the state court's application of the Supreme Court precedent was objectively unreasonable.  <u>Id</u>.  In short, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.  <u>Id</u>.; <u>see</u> <u>also</u> <u>Jacobs v. Horn</u>, 395 F.3d 92, 100 (3d Cir. 2005).

Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court."  <u>Id</u>.; <u>see</u> <u>also</u> 28 U.S.C. § 2254(e)(1).  The Third Circuit has ruled that this presumption of correctness based upon state court factual findings can only be overcome by clear and convincing evidence.  <u>See</u> <u>Duncan</u>, 256 F.3d at 196 (*citing* 28 U.S.C. § 2254(e)(1)).  Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings."  <u>Mastracchio v. Vose</u>, 274 F.3d 590, 597-98 (1st Cir. 2001).

VI.  <u>ANALYSIS</u>

A.  <u>Request for an Evidentiary Hearing</u>

Dirago seeks an evidentiary hearing in this matter with respect to his claims of ineffective assistance of counsel. Dirago asserts that the state trial court denied his PCR petition without holding an evidentiary hearing.  A limited evidentiary hearing was later held by the trial court on the jury <u>voir</u> <u>dire</u> issue, and post-conviction relief was granted.  However, the Appellate Division reversed, and petitioner now claims that the appellate court's decision was not supported by the record.

Prior to enactment of the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. 104-132, 110 Stat. 1217 (April 24, 1996), the Supreme Court held that "where an applicant for a writ of habeas corpus alleges facts which, if proved, would entitle him to relief, the federal court to which the application is made has the power to receive evidence and try the facts anew." <u>Townsend v. Sain</u>, 372 U.S. 293, 312 (1963).  Indeed, in certain circumstances, an evidentiary hearing was mandatory.

> Where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding.  In other words a federal evidentiary hearing is required unless the state-court trier of fact has after a full hearing reliably found the relevant facts.
>
> ...

11

> [A] federal court must grant an evidentiary hearing to
> a habeas applicant under the following circumstances:
> If (1) the merits of the factual dispute were not
> resolved in the state hearing; (2) the state factual
> determination is not fairly supported by the record as
> a whole; (3) the fact-finding procedure employed by the
> state court was not adequate to afford a full and fair
> hearing; (4) there is a substantial allegation of newly
> discovered evidence; (5) the material facts were not
> adequately developed at the state-court hearing; or (6)
> for any reason it appears that the state trier of fact
> did not afford the habeas applicant a full and fair
> fact hearing.

Id. at 312-13.  The Supreme Court later refined this standard

with respect to the fifth circumstance enumerated in Townsend,

requiring a prisoner to "show cause for his failure to develop

the facts in the state-court proceedings and actual prejudice

resulting from that failure," but not otherwise curtailing the

Townsend list.  Keeney v. Tamayo-Reyes, 504 U.S. 1, 11 (1992).

Keeney's threshold standard of diligence was codified by AEDPA in

the opening clause of new 28 U.S.C. § 2254(e)(2).  Williams v.

Taylor, 529 U.S. 420 (2000).

    Title 28 Section 2254(e) curtails the circumstances under

which a District Court may grant an evidentiary hearing.  It

provides:

> (e)(1)  In a proceeding instituted by an
> application for a writ of habeas corpus by a person in
> custody pursuant to the judgment of a State court, a
> determination of a factual issue made by a State court
> shall be presumed to be correct.  The applicant shall
> have the burden of rebutting the presumption of
> correctness by clear and convincing evidence.
>
> (2)  If the applicant has failed to develop the
> factual basis of a claim in State court proceedings,

the court shall not hold an evidentiary hearing on the
claim unless the applicant shows that-

        (A)  the claim relies on-
           (i)  a new rule of constitutional law,
made retroactive to cases on collateral review by the
Supreme Court that was previously unavailable; or
           (ii)  a factual predicate that could not
have been previously discovered through the exercise of
due diligence; and

        (B)  the facts underlying the claim would be
sufficient to establish by clear and convincing
evidence that but for constitutional error, no
reasonable factfinder would have found the applicant
guilty of the underlying offense.

28 U.S.C. § 2254(e).

Thus, if a prisoner fails to develop the factual basis of a
claim in State court proceedings, through some lack of diligence
or greater fault attributable to the prisoner or the prisoner's
counsel, an evidentiary hearing cannot be granted unless the
prisoner's case meets the other conditions of § 2254(e)(2).
Williams, 529 U.S. at 429-37.  Conversely, where the facts have
not been developed in State court proceedings through no fault of
the prisoner or the prisoner's counsel, the prisoner is "excused
from showing compliance with the balance of the subsection's
requirements."  Id. at 437.

        However, even if a new evidentiary hearing is
permitted under AEDPA--when it is solely the state's
fault that the habeas factual record is incomplete--
AEDPA, unlike Townsend and Keeney, does not require
that such a hearing be held.  Instead, federal courts
have discretion to grant a hearing or not.  In
exercising that discretion, courts focus on whether a
new evidentiary hearing would be meaningful, in that a

13

new hearing would have the potential to advance the petitioner's claim.

Campbell v. Vaughn, 209 F.3d 280, 287 (3d Cir. 2000), cert. denied, 531 U.S. 1084 (2001).

Finally, § 2254(e)(2)'s introductory language "does not preclude federal hearings on excuses for procedural default at the state level." Cristin v. Brennan, 281 F.3d 404, 413 (3d Cir. 2002), cert. denied, 537 U.S. 897 (2002).

Here, Dirago seeks an evidentiary hearing on his claim that trial counsel was ineffective with respect to the jury voir dire, and on his claim that the jury voir dire was "woefully inadequate". (Petitioner's Brief at pg. 15). As stated above, an evidentiary hearing was conducted by the state PCR court with respect to these issues. Moreover, the jury voir dire is part of the record available for review.

Thus, a proper factual record was developed and Dirago was given the opportunity to obtain testimonial evidence of his trial counsel and present his claim to the state courts, in connection with his post-conviction relief proceedings. Dirago has not established entitlement to an evidentiary hearing in this proceeding under the standard set forth in § 2254(e)(2); therefore, his request for an evidentiary hearing must be denied.

B.   The Jury Selection Process Was Flawed by Inadequate Voir Dire

In his second claim, Dirago contends that he was denied the right to be tried by a fair and impartial jury in violation of

14

his Sixth and Fourteenth Amendment rights.  In particular, Dirago asserts that the trial judge's jury voir dire was "woefully inadequate" in ascertaining the critical areas of potential bias and predisposition.

The PCR court held an evidentiary hearing on this issue and granted relief in a written opinion dated April 8, 2002.  (RE 11).  The PCR court specifically ruled that Dirago's counsel rendered ineffective assistance of counsel by failing to object to the insufficient voir dire of potential jurors.  The court based its decision on two state court cases, State v. Oates, 246 N.J. Super. 261 (App. Div. 1991)(trial judge improperly refused to voir dire jury on questions requested by defense counsel as to whether the jurors would tend to credit police officers' testimony more or less than any other witness) and State v. Lumumba, 253 N.J. Super. 375 (App. Div. 1992)(trial court's failure to voir dire jury on the basic principles of presumption of innocence and the indictment process deprived defendant of constitutional right to a fair trial).  (RE 11, at pg. 2).  Upon reading the transcript of the jury selection, the PCR court determined that the voir dire was inadequate, and that defense counsel's failure to object to the voir dire questioning constituted ineffective assistance of counsel.  (RE 11, at pg. 3).

The PCR court further noted that the trial judge was the same in both <u>Oates</u> and <u>Lumumba</u>, and that the four questions asked were nearly identical as to those two cases.  The court also found that petitioner had proven both prongs of an ineffective assistance of counsel claim, namely, that defense counsel was deficient because "he was unaware that there was a need to object where he believed there to be insufficient <u>voir dire</u>", and "that but for [defense counsel's] failure to object during <u>voir dire</u> there may have been a different result." (RE 11, at pg. 4).  The PCR court vacated the conviction and required a retrial of petitioner.

On appeal by the State, the Appellate Division reversed the PCR court's ruling.  In its decision rendered on November 25, 2002, the Appellate Division noted:

> The trial court asked only four questions of the panel as a whole: whether any of them had served as a juror in a criminal trial or had testified as a witness in a criminal trial; whether any of the jurors or anyone close to them had ever been a victim of a crime of violence; whether any of them had someone close to them who was involved in law enforcement; and whether any of them knew the parties, attorneys or potential witnesses.  The trial court did ask appropriate follow-up questions to any affirmative responses it received.  Although the trial court did not inquire whether the jury could accept and apply the principles of law even if it disagreed with them and did not cover such items as the presumption of innocence and the need for proof beyond a reasonable doubt to convict, defendant's attorney voiced no objection and made no effort to supplement the <u>voir dire</u>.
>
> Defendant raised the sufficiency of this <u>voir dire</u> on his direct appeal. ... Although we recognized the <u>voir dire</u> conducted in this trial did not comply with the guidelines

we set down in <u>State v. Lumumba</u>, 253 N.J. Super. 375 (App.
Div. 1992), and <u>State v. Oates</u>, 246 N.J. Super. 261 (App.
Div. 1991), we noted that no objection was interposed by
this defendant's trial counsel, contrary to the situation
presented in <u>Lumumba</u> and <u>Oates</u>.  We also noted that trial
counsel only used eight of the peremptory challenges
available to him.  We concluded that "[w]e ... [could] only
infer that defendant's privately retained counsel, who was
admitted <u>pro</u> <u>hac</u> <u>vice</u> for this trial, was satisfied with the
conduct of this <u>voir</u> <u>dire</u> and did not consider his ability
to select a fair jury hampered."

...

The record that was presented in connection with the PCR
petition contained nothing that would support an inference
that any member of this panel would not have participated as
a juror if the <u>voir</u> <u>dire</u> had been more extensive.  We have
no basis to conclude that this jury represented anything
other than a fair cross section of the community; defendant
was entitled to no more.

(RE 4, at pp. 3-4, 8).

The Sixth Amendment to the United States Constitution

provides that "[i]n all criminal prosecutions, the accused shall

enjoy the right to a speedy and public trial, by an impartial

jury." U.S. Const. Amend. VI.  The right to an impartial jury is

applicable to the States through the Fourteenth Amendment.  <u>See</u>

<u>Morgan v. Illinois</u>, 504 U.S. 719, 726 (1992); <u>Duncan v.</u>

<u>Louisiana</u>, 391 U.S. 145 (1968).

Thus, the Constitution requires an impartial jury, but it

does not dictate a "catechism" for jury <u>voir</u> <u>dire</u>.  <u>Morgan</u>, 504

U.S. at 729.  Absent racial or ethnic bias, or capital punishment

issues, the Supreme Court has held that trial courts have

substantial discretion in determining the need for specific

questions during jury <u>voir</u> <u>dire</u>.  <u>See</u> <u>Rosales-Lopez v. United</u>
<u>States</u>, 451 U.S. 182, 190 (1981); <u>Ristaino v. Ross</u>, 424 U.S. 589,
595 (1976)(the Supreme Court acknowledged that constitutional
requirements exist as to questioning prospective jurors about
racial or ethnic bias).  Consequently, under federal law, the
trial courts have considerable discretion in conducting <u>voir</u>
<u>dire</u>; however, trial courts must make inquiries relevant to
disclose actual bias and satisfy the demands of fairness.  <u>See</u>
<u>Butler v. City of Camden</u>, 352 F.3d 811, 819 (3d Cir. 2003)(citing
<u>United States v. Dansker</u>, 537 F.2d 40, 56 (3d Cir. 1976), <u>cert.</u>
<u>denied</u>, 429 U.S. 1038 (1977)).  Trial judges are afforded
discretion in conducting <u>voir</u> <u>dire</u> because the "determination of
impartiality, in which demeanor plays such an important part, is
particularly within the province of the trial judge." <u>Ristaino</u>,
424 U.S. at 594 (citation omitted).  A trial judge's factual
findings during jury <u>voir</u> <u>dire</u> are entitled to a presumption of
correctness on habeas review.  <u>See</u> <u>Wainwright v. Witt</u>, 469 U.S.
412, 428 (1985).

In this case, Dirago complains that the trial judge did not
conduct a proper or adequate <u>voir</u> <u>dire</u> of the jury.  However,
Dirago submits no evidence that his jury was impartial or unfair,
or that any particular juror was biased.  A review of the record
indicates that the trial court conducted a limited but adequate
<u>voir</u> <u>dire</u>.  There were no issues of race, nor was the death

18

penalty sought in this case.  The trial judge asked specific and pertinent follow-up questions of individual jurors who responded affirmatively to his general questions probing bias.  Defense counsel neither requested specific questions on voir dire, nor did he object to the court's general voir dire of the jury. Counsel displayed no dissatisfaction with the jury impaneled and he had not used all of his peremptory challenges when he accepted the jury.

Moreover, the trial judge spoke to the jury about the requirement of absolute impartiality, and he excused five jurors for cause.  (4T, transcript of April 2, 1991 jury selection).  At the end of the trial, the judge charged the jury on the presumption of innocence and reasonable doubt.  (10T 100:18-102:5).  He also instructed the jury to deliberate the evidence impartially.  (10T 102:21-103:8).

Therefore, this Court concludes, based on the record and Dirago's lack of evidence as to jury bias, that Dirago has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the trial court and the Appellate Division "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding."  Accordingly, this ground for a writ of habeas corpus will be denied.

C.   <u>Trial Court Arbitrarily Deprived Dirago of an Impartial Jury</u>

The third claim asserted by Dirago appears to suggest that Dirago was denied an impartial jury because his trial counsel was unable to challenge jurors for cause or to intelligently exercise his peremptory challenges.  As discussed above, the record shows that follow-up questions posed by the trial judge resulted in the court's dismissal of five jurors for cause, and defense counsel used eight peremptory challenges out of the 20 peremptory challenges permitted under the rules.  N.J.Ct.R. 1:8-3(d).  There is no showing by petitioner that he was denied the use of peremptory challenges, or that there was evidence of juror bias to support a challenge for cause.  Further, there was nothing in the record to dispute the Appellate Division's finding on direct appeal that "defendant's privately-retained counsel, who was admitted <u>pro</u> <u>hac</u> <u>vice</u> for this trial, was satisfied with the conduct of this <u>voir</u> <u>dire</u> and did not consider his ability to select a fair jury hampered."  (RE 21, Appellate Division Opinion, decided October 13, 1994, at pg. 10).

Accordingly, this claim for relief will be denied for lack of substantive merit.

D.   Ineffective Assistance of Trial Counsel

     Next, Dirago asserts that he was denied effective assistance
of trial counsel in violation of his Sixth and Fourteenth
Amendment rights.  He alleges a litany of deficient
representation as follows: (1) trial counsel failed to object to
insufficient jury voir dire; (2) trial counsel failed to object
to admission of "other crimes" evidence with no limiting
instruction; (3) trial counsel failed to object to the trial
court's refusal to read back entire cross-examination testimony
of Detective O'Laughlin; (4) trial counsel failed to investigate
and cross-examine Charles Schneck; (5) trial counsel failed to
investigate and prepare cross-examination of the State's chief
witness, Richard Ferrante; (6) trial counsel failed to properly
prepare defense witness Leslie Eisenberg; (7) trial counsel
failed to call Pennsylvania Medical Examiner, Dr. Mann, as a
witness for the defense; and (8) trial counsel failed to submit a
supporting brief on defendant's motion for a new trial.  Finally,
Dirago contends that the cumulative effect of these errors
deprived him of his right to a fair trial and due process of the
law.

     The "clearly established Federal law, as determined by the
Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), is
the standard for ineffective assistance of counsel as enunciated
in Strickland v. Washington, 466 U.S. 668 (1984).  Under

<u>Strickland</u>, a petitioner seeking to prove a Sixth Amendment violation must demonstrate that his counsel's performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel's conduct.  <u>Id</u>. at 688-89; <u>Jacobs v. Horn</u>, 395 F.3d 92, 102 (3d Cir. 2005); <u>Keller v. Larkins</u>, 251 F.3d 408, 418 (3d Cir.), <u>cert</u>. <u>denied</u>, 534 U.S. 973 (2001).  Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 688.  "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances."  <u>Id</u>.  The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v. Wheatherwax, 77 F.3d 1425, 1431 (3d Cir.), cert. denied, 519 U.S. 1020 (1996).

If able to demonstrate deficient performance by counsel, petitioner must also show that counsel's substandard performance actually prejudiced his defense.  Strickland, 466 U.S. at 687. Prejudice is shown if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.  The reviewing court must evaluate the effect of any errors in light of the totality of the evidence. Id. at 695-96.  Thus, the petitioner must establish both deficient performance and resulting prejudice in order to state an ineffective assistance of counsel claim.  Id. at 697.  See also Jacobs, 395 F.3d at 102; Keller, 251 F.3d at 418.

1.  *Trial Counsel Failed to Object to Jury Voir Dire*

Dirago raised this claim in his state PCR petition.  An evidentiary hearing was conducted solely on this issue, and the court later granted post-conviction relief by written opinion dated April 8, 2002.  The PCR court determined that the jury voir dire was inadequate and that counsel's failure to object to the voir dire questioning "rises to the level of ineffective assistance of counsel, since there [was] a reasonable probability

23

that if an objection had been made, as in <u>Oates</u> and <u>Lumumba</u>, the result would have been different." (RE 11, at pp. 3-4). The PCR court found deficient performance under the first prong of the <u>Strickland</u> test based on trial counsel's admission that he was unaware that there was a need to object where he believed there to be insufficient <u>voir dire</u>. The PCR court further concluded that the petitioner met the second prong of the test given the overwhelming similarities between this case and <u>Oates</u> and <u>Lumumba</u>. (RE 11, at pg. 4).

However, the Appellate Division reversed on appeal. Following the precedent set forth in <u>Strickland</u>, the court found that:

> The attorney who represented defendant at trial was, as noted earlier, not a member of the New Jersey bar. He was admitted to practice in New York State and was admitted pro hac vice for purposes of trial. At the time of defendant's trial in 1991, he had practiced as an attorney for more than twenty-five years and had extensive trial experience in courts across the country, both state and federal, as well as courtsmartial under the Uniform Code of Military Justice. He candidly admitted that he conducted no research into New Jersey procedures for <u>voir dire</u> prior to the start of defendant's trial. He testified that in his experience, the scope of permissible <u>voir dire</u> has changed over the years and was "certainly narrow in the jurisdictions [he] practiced in." He outlined some of the <u>voir dire</u> techniques he has utilized over the years and admitted that at least as to one (dealing with the burden of proof in a criminal case) he was "usually criticized by the Court." He said he had "never" experienced a trial judge giving free rein to defense counsel to conduct <u>voir dire</u> and conceded that for many attorneys, the purpose in questioning jurors directly is "to sell their case." When asked if he were satisfied with the jury that was empaneled, he responded in part

I -- under the circumstances, I didn't think I had any
-- any alternative but to accept the jury as it had
been seated.  I don't know that I was satisfied.  I
would have liked to have asked questions myself, but I
didn't know that I had a right to object. ...

Some time after conclusion of the plenary hearing, the trial
court issued a letter opinion in which it ruled that
defendant had established ineffective assistance of counsel
within the parameters of Strickland, supra.  In reaching
this determination, the trial court noted the existence of
our opinions in State v. Lumumba, supra, and State v. Oates,
supra, in which we reversed convictions based upon an
inadequate voir dire of the jury.  In each case, defendant's
counsel had objected.  The trial court here concluded that
if defense counsel had objected at trial, this court would
have reversed his convictions as we had those of Mr. Lumumba
and Mr. Oates.

In our view, the possibility of obtaining a reversal on
appeal does not, by itself, satisfy the second prong of
Strickland which requires a showing that but for the error,
the result of the proceeding would have been different.
[citation omitted].  It does not lead us to doubt the
reliability of the underlying guilty verdict that this jury
returned.  We consider that aspect of Strickland to refer to
a showing that a different outcome would have been obtained
in the trial court, not simply that defendant might have
achieved a second trial.

The record that was presented in connection with the PCR
petition contained nothing that would support an inference
that any member of this panel would not have participated as
a juror if the voir dire had been more extensive.  We have
no basis to conclude that this jury represented anything
other than a fair cross section of the community; defendant
was entitled to no more.

(RE 4, at pp. 6-8).

As stated in the earlier sections of this Opinion, this

Court finds no error in the trial court's jury voir dire, nor was

there any evidence of jury bias that would have required the

trial counsel to object to the general voir dire conducted by the

25

court.  Thus, absent an error in the voir dire, there is nothing
to support a claim of ineffective assistance of counsel for
failing to object.

After reviewing the record, this Court finds nothing to
indicate that the state appellate court decision (which concluded
there was no prejudicial error, and hence, no ineffective
assistance of counsel) was based on an unreasonable application
of the facts in light of the evidence presented at trial.  Nor
was the decision contrary to established federal law.  The
Appellate Division adhered to the Strickland standard, and found
no prejudice to satisfy the second prong of the Strickland test.
Dirago has not demonstrated to this Court that the state court
decision, when evaluated objectively and on the merits, resulted
in an outcome that cannot be reasonably justified.  Matteo, 171
F.3d at 891.  Accordingly, this first ground of ineffective
assistance of counsel is denied for lack of merit.

2.  *No Objection to Admission of "Other Crimes" Evidence*

Dirago argues that his counsel was deficient in failing to
object to "other crimes" evidence introduced by two of the
State's witnesses, John Hall and Roger Kleber.  In a written
opinion dated August 3, 2000, the PCR court denied this claim,
finding that petitioner had not made out a prima facie case.
Specifically, the court noted that "petitioner fail[ed] to even
discuss the second prong of the Strickland test."  (RE 14, at pg.

26

2).  The PCR court also found that this issue was "identical to
the argument raised on direct appeal", which asserted that the
trial judge erred in allowing the "other crimes" evidence without
any limiting instructions.  (Id.).  On direct appeal, the
Appellate Division stated:

> Defendant first complains the trial court failed to give any
> limiting instructions on the proper use of so-called "other
> crimes" evidence, as required by State v. Cofield, 127 N.J.
> 328 (1992) and State v. Oliver, 133 N.J. 141 (1993).  Since
> defendant failed to object to the jury instructions at
> trial, defendant raises the issue as plain error.
>
> While we recognize that erroneous "instructions of law are
> poor candidates for rehabilitation under a harmless-error
> analysis," State v. Rhett, 127 N.J. 3, 7 (1992), we are
> satisfied, after a careful review of the record in this
> matter, that this subsequently-complained-of omission does
> not justify reversal of the murder conviction.  We reach
> this conclusion for several reasons.
>
> Defendant's trial commenced with testimony on April 3, 1991;
> the jury returned its verdict on April 19, 1991.  In that
> span, the jury heard from nineteen witnesses for the
> prosecution.  The evidence for which a limiting instruction
> should have been given, but was not, was offered by two of
> those witnesses, John Hall and Roger Kleber.  (The trial
> judge did tell the jury, albeit in skeletal form, that
> Ferrante's testimony of drug trafficking bore on the issue
> of motive.  We perceive no plain error).
>
> Kleber testified that, while sharing drugs with Dirago,
> Dirago stated the police "were trying to hang something on
> him" but would be unable to do so "because they would never
> find the body."  Over objection, Mr. Kleber was also
> permitted to testify that Dirago told him "if I ever need
> anything done, or anybody done, that he would take care of
> it for me or if ever I needed any weapons, he could provide
> it for me."
>
> John Hall, who had been incarcerated with Dirago, testified
> that Dirago offered to expand his drug business to include
> Hall.  He also testified that Dirago told him of his

conversation with Kleber and that "he was going to have to
get rid of Mr. Kleber also."

We do not believe the failure by the trial court to instruct
the jury on the proper handling of these brief exchanges
warrants reversal.  Our Supreme Court has recognized that a
verdict may stand, in the face of omitted instructions, when
a prosecutor has not urged an incorrect or improper position
in his closing remarks.  <u>State v. Marshall</u>, 123 N.J. 1, 145
(1991).  In that case, the Supreme Court stated "[t]he
prejudicial effect of an omitted instruction must be
evaluated 'in light of the totality of the circumstances --
including all the instructions to the jury [and] the
arguments of counsel'."  <u>Id</u>. at 145, <u>quoting</u> <u>Kentucky v.
Whorton</u>, 441 U.S. 786, 789, 99 S.Ct. 2088, 2089, 60 L.Ed.2d
640, 643 (1979), in which the U.S. Supreme Court refused to
overturn a guilty verdict when the trial court failed to
instruct the jury on the presumption of innocence.

In support of the position that omitted instructions do not,
of necessity, mandate a reversal, the <u>Marshall</u> court also
relied on <u>Henderson v. Kibbe</u>, 431 U.S. 145, 97 S.Ct. 1730,
52 L.Ed.2d 203 (1977), in which the Court refused to find
prejudicial error in a trial court's failure to instruct the
jury on the issue of causation.  Within that opinion,
Justice Stevens stated that "[a]n omission, or an incomplete
instruction, is less likely to be prejudicial than a
misstatement of the law."  <u>Id</u>. at 155.  In this case, the
prosecutor never argued to the jury that this testimony
showed that defendant was a bad person with criminal
propensities.  He did not comment on this evidence in an
unfair or improper way.

We recognize that it may strike some as anomalous that one
guilty verdict may be sustained in the face of an omitted
instruction and another reversed in the face of an incorrect
one.  We cannot lose sight of the fact, however, that we
review this matter under the plain error standard.  Plain
error is reversible error only if clearly capable of
producing an unjust result.  <u>State v. Cofield</u>, 127 N.J. 328,
341 (1992); <u>State v. Hunt</u>, 115 N.J. 330, 363 (1989).

Defendant contends the case was a close one.  He points to
extended jury deliberations, to expert testimony presented
on his behalf that the condition of Ms. Davi's body at the
time it was discovered indicated she died no earlier than
three months before its discovery in December, 1985, and to

28

evidence that an examination of the vehicle defendant used
on April 16, 1985 uncovered no evidence of blood.

We note, at the outset, that we do not consider the length
of jury deliberations indicative, one way or the other, of
the strength of the evidence in a particular matter.  As to
defendant's expert forensic anthropological evidence, the
credibility of that was clearly up to the jury.  If the jury
accepted that testimony, it would, of necessity, have had to
acquit defendant.  By its verdict, the jury clearly
indicated it did not accept that opinion.

As to the evident lack of blood stains in the vehicle, no
clear testimony existed to indicate that the two small
caliber bullets found with Ms. Davi's remains would cause
extensive external bleeding.  Indeed, the pathologist who
testified described the one entry wound he was able to
identify as being only one-third of an inch by one-sixth of
an inch.

We do not believe that the trial court's failure, without
objection, to give the jury limiting instructions on this
evidential matter was "clearly capable of producing an
unjust result," State v. Cofield, supra, and we decline to
reverse on that basis.

(RE 21, at pp. 5-9).

This claim involves issues of state evidentiary and

procedural law not normally cognizable on federal habeas review,

i.e., questions relating to jury instructions are normally

matters of state law and are not cognizable in federal habeas

review.  See Engle v. Isaac, 456 U.S. 107 (1982); Henderson v.

Kibbe, 431 U.S. 145 (1977); Zettlemoyer v. Fulcomer, 923 F.2d

284, 309 (3d Cir.), cert. denied, 502 U.S. 902 (1991); Grecco v.

O'Lone, 661 F. Supp. 408, 412 (D.N.J. 1987)(Thompson, J.).  Only

where the jury instruction is "so prejudicial as to amount to a

violation of due process and fundamental fairness will a habeas corpus claim lie." Id.

Where a federal habeas petitioner challenges jury instructions given in a state criminal proceeding,

> [t]he only question for us is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record.  In addition, in reviewing an ambiguous instruction ..., we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution.  And we also bear in mind our previous admonition that we "have defined the category of infractions that violate 'fundamental fairness' very narrowly."  "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (citations omitted).  Thus, the Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law."  Smith v. Horn, 120 F.3d 400, 416 (1997), cert. denied, 522 U.S. 1109 (1998).

Where such a constitutional error has occurred, it is subject to "harmless error" analysis.  Smith v. Horn, 120 F.3d at 416-17; Neder v. United States, 527 U.S. 1, 8-11 (1999).  "[I]f the [federal habeas] court concludes from the record that the error had a 'substantial and injurious effect or influence' on the verdict, or if it is in 'grave doubt' whether that is so, the

error cannot be deemed harmless." <u>Smith v. Horn</u>, 120 F.3d at 418

(citing <u>California v. Roy</u>, 519 U.S. 2, 5 (1996)).  In evaluating

a challenged instruction,

> a single instruction to a jury may not be judged in
> artificial isolation, but must be viewed in the context
> of the overall charge.  If the charge as a whole is
> ambiguous, the question is whether there is a
> reasonable likelihood that the jury has applied the
> challenged instruction in a way that violates the
> Constitution.

<u>Middleton v. McNeil</u>, 541 U.S. 433, 437 (2004) (internal

quotations and citations omitted).

Here, the trial court and the appellate court on direct

appeal determined that the omitted instruction on the limited use

of "other crimes" evidence was harmless error.  This Court

agrees.  "An omission, or an incomplete instruction, is less

likely to be prejudicial than a misstatement of the law."

<u>Henderson v. Kibbe</u>, 431 U.S. at 155.  Specifically, in this case,

the Appellate Division determined that there was overwhelming

evidence against petitioner and that the case was not "a close

one" as argued by Dirago.  Indeed, the court found that the

testimony of Kleber and Hall was brief in contrast to the

nineteen witnesses produced by the State, in particular, the

testimony of the State's main witness and accomplice, Richard

Ferrante.  Consequently, to the extent there may have been an

error in failing to object to the omission of a limiting

instruction, it was plainly harmless.  Counsel's failure to object was not likely to change the result of the trial.

After reviewing the record, this Court finds nothing to indicate that the state court decisions (which concluded there was no error, and hence, no ineffective assistance of counsel) were based on an unreasonable application of the facts in light of the evidence presented at trial.  Nor were the decisions contrary to established federal law.  Dirago has not demonstrated that the state court decisions, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified.  Matteo, 171 F.3d at 891.  Accordingly, this claim of ineffective assistance of counsel is without merit.

   3.  *Failure to Object to Court's Refusal to Read Back Entire Cross-Examination Testimony of Detective O'Laughlin*

Dirago contends that the jury had requested the testimony of Detective O'Laughlin be read back with respect to the testing of the automobile.  This testimony occurred during the direct examination.  Dirago argues that the read back should have included the entire testimony, even the cross-examination, because the direct testimony did not mention the lack of blood found in the car where the victim was allegedly shot.  The jury was thus deprived of review of exculpatory evidence.

Dirago raised this claim in his PCR petition.  In its August 3, 2000 letter opinion (RE 14), the PCR court found, upon review of the trial transcript, that the jury did not ask the court to

have any portion of the detective's testimony read back for them.
Rather, the jury simply asked whether the car was ever tested for
the presence of blood.  The trial judge proceeded to state his
recollection of the testimony and asked if anyone had a different
recollection.  Defense counsel responded and requested that the
direct testimony be read back.  Specifically, he asked the court
reporter to read back that portion of the testimony which
involved the testing of the car.  There was no request for any
other testimony and the court did not refuse any request.  (11T
4:10-5:24).  Accordingly, the PCR court found no merit to this
claim.  (RE 14, at pg. 2).

This Court finds this claim to be completely without merit.
Defense counsel's representation in this instance was not
deficient; there was no specific request for the read back and
pertinent testimony was provided for the jury at defense
counsel's request.  Further, there was nothing in the cross-
examination testimony that would have likely changed the outcome
of the trial if it had been read back to the jury.  Indeed, as
noted by the Appellate Division on direct appeal, "[a]s to the
evident lack of blood stains in the vehicle, no clear testimony
existed to indicate that the two small caliber bullets found with
Ms. Davi's remains would cause extensive external bleeding."  (RE
21, at pg.8).

Thus, this Court finds nothing to indicate that the state court decision on this issue was based on an unreasonable application of the facts in light of the evidence presented at trial.  Nor was the decision contrary to established federal law.  This ground for relief will be denied accordingly.

4. *Failure to Investigate and Cross-Examine Witnesses*

Next, Dirago asserts that his counsel's performance was ineffective because he failed to investigate and cross-examine several critical State witnesses, namely, Charles Schneck and Richard Ferrante.[4]  Dirago raised both grounds in his state PCR petition.

The PCR court concluded that Dirago failed to make out a prima facie claim on both grounds because petitioner was unable to show the court what an investigation would have uncovered in each instance.  Thus, there was no showing of prejudice by counsel's alleged deficient performance.  (RE 14, at pp. 2-3).

"[A]n attorney must investigate a case, when he has cause to do so, in order to provide minimally competent professional representation."  United States v. Kauffman, 109 F.3d 186, 190

---

[4]  Dirago complains that counsel was deficient in failing to investigate and cross-examine Charles Schneck concerning the victim's last day of work.  Schneck testified on direct that the victim was terminated from her job on April 26, 1985, and that this was her last day of work, which post-dates the State's alleged date of death on April 16, 1985.  As for Ferrante, Dirago seems to complain only that the cross-examination was not vigorous because Ferrante's answers were vague.

(3d Cir. 1997); <u>Lewis v. Mazurkiewicz</u>, 915 F.2d 106, 111 (3d Cir. 1990)(counsel has a duty to investigate or to make a reasonable decision that makes particular investigations unnecessary).  When assessing an ineffectiveness claim based on failure to investigate, a court must assess the decision not to investigate "for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." <u>Strickland</u>, 466 U.S. at 691; <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 384 (1986); <u>see also</u> <u>Duncan v. Morton</u>, 256 F.3d 189, 201 (3d Cir.), <u>cert</u>. <u>denied</u>, 534 U.S. 919 (2001).  "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." <u>Strickland</u>, 466 U.S. at 691-92.  Even if counsel was deficient in his decision not to investigate, a petitioner must show a reasonable likelihood that, but for the deficiency, the result of the proceeding would have been different.  <u>Lewis</u>, 915 F.2d at 115.

After reviewing the record, this Court finds nothing that would support a blanket argument that Dirago's counsel failed to investigate and properly prepare for cross-examination of the witnesses, Schneck and Ferrante.  There was simply no need to cross-examine Mr. Schneck.  The parties stipulated to the business record, which showed the victim's last date of employment as April 26, 1985.  (8T 51:15-53:10).  There was

35

nothing further to be gained by a cross-examination.  As to
Ferrante, a careful review of the trial transcript shows a
thorough and rigorous cross-examination to discredit the witness'
credibility.  (9T 37:19-54:15).

Decisions by trial counsel with regard to examination of
witnesses are strategic by nature and necessitate a strong level
of deference to the attorney's assessment.  See Diggs v. Owens,
833 F.2d 439, 444-45 (3d Cir. 1987), cert. denied, 485 U.S. 979
(1988).  Here, there was no deficient performance by counsel in
declining to cross-examine Schneck because admission of the
business records showing Davi's last date of employment had been
stipulated.  Nothing in the thorough cross-examination of
Ferrante shows deficient performance by counsel.  Finally, the
PCR court found that petitioner failed to demonstrate what
further investigation would have revealed at trial and that there
was no prejudice shown.  Thus, this Court finds nothing to
indicate that the state court decision on this issue was based on
an unreasonable application of the facts in light of the evidence
presented at trial.  Nor was the court's decision contrary to
established federal law set forth in Strickland.  Dirago has not
demonstrated that the state court decision, when evaluated
objectively and on the merits, resulted in an outcome that cannot
be reasonably justified.  Matteo, 171 F.3d at 891.  Accordingly,
this claim will be denied for lack of substantive merit.

5.   *Failure to Prepare and Call Defense Witnesses*

Next, Dirago alleges that his counsel was ineffective because he failed to prepare a defense witness for trial testimony, and declined to call a forensic anthropologist to testify at trial.  As to the first ground, Leslie Eisenberg was a defense expert anthropologist who testified that the victim's remains had been present at the discovery site for no more than three months before its discovery on December 30, 1985, placing her death months after the alleged date of death on April 16, 1985.  The State elicited on cross-examination that Eisenberg had only reviewed photographs of the victim's body and the crime scene shortly before her trial testimony.  Dirago contends that his counsel should have better prepared the witness because this revelation on cross-examination affected the witness' credibility.

As to a second potential witness, Dirago contends that his counsel was ineffective in failing to call Dr. Mann, another forensic anthropologist, who stated in an early report that the body of the victim had not been at the discovery site more than two months before it was found.  Dirago alleges that his counsel tried to cure this oversight by attempting to move the report into evidence, an application that was denied by the court.

These claims were raised in the state PCR petition.  The PCR court rejected these grounds of ineffective assistance because

petitioner offered no proof or evidence that the outcome of the trial might have been different if Eisenberg had reviewed the photographs earlier, or that Dr. Mann's testimony would have impacted upon the outcome of the trial.  (RE 14, at pg. 3).

Upon review of the record, and Dirago's petition, this Court finds that petitioner fails to demonstrate how the outcome of the trial might have been different.  There was substantial testimony by many witnesses implicating Dirago in Davi's murder, in particular, the State's main witness, Richard Ferrante, who was an accomplice in the murder.  The trial record shows overwhelming evidence of petitioner's guilt such that the equivocal expert testimony of Eisenberg and Dr. Mann would not likely have changed the outcome of the trial.  Thus, there is nothing in the record to indicate that the state court decision on these issues were based on an unreasonable application of the facts in light of the evidence presented at trial.  Nor was the court's decision contrary to established federal law set forth in Strickland. Dirago has not demonstrated that the state court decision, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified.  Matteo, 171 F.3d at 891.

6.  *Failure to Submit Brief on Motion for a New Trial*

Dirago also complains that his counsel did not file a brief in support of his motion for a new trial.  The PCR court found that, although it was clear that counsel did not submit a

supporting brief on Dirago's motion, Dirago failed to show how this would have changed the outcome of the case; "[t]hat is, what would or could counsel have submitted at that point that would have convinced the court to grant a new trial and cause the second jury to acquit." (RE 14, at pg. 4). The court further remarked that the standard to set aside a guilty verdict is whether it clearly and convincingly appears that there was a manifest denial of justice. Moreover, the court stated that while Dirago did not have the opportunity to be heard on his motion for a new trial, he did have an opportunity to be heard on appeal.

This Court agrees that petitioner has not established a claim of ineffective assistance of counsel on this issue because he has not satisfied the second prong under Strickland. Dirago has not shown any prejudice by counsel's deficiency in failing to file a brief in support of the motion for a new trial, because Dirago has not demonstrated a reasonable probability that, but for counsel's deficient performance, he would have been granted a new trial or that the result of the trial would have been different. Id. at 694. Furthermore, to establish ineffective assistance of counsel based on a failure to file a motion, or in this case a brief in support of a motion for a new trial, Dirago must be able to show that the motion would have succeeded. Counsel's failure to file motions does not per se constitute

39

ineffective assistance of counsel.  See Kimmelman v. Morrison, 477 U.S. 365, 383-84 (1986); Jelinek v. Costello, 247 F. Supp.2d 212 (E.D.N.Y. 2003).  Rather, a determination of ineffectiveness depends on whether the motion would have been granted had it been made.  United States v. Oakley, 827 F.2d 1023, 1025 (5th Cir. 1987).  See also Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir.), cert. denied, 513 U.S. 1022 (1994)(failure to raise non-meritorious issues does not constitute ineffective assistance of counsel).  Here, it was not likely that the trial court would have granted a new trial based on the overwhelming evidence against petitioner.

As noted by the PCR court, Dirago was not denied an opportunity to appeal his conviction, but ultimately, his appeal was unsuccessful.  Thus, even accepting that counsel may have been deficient in not presenting a brief on his client's motion for a new trial, this Court finds nothing in the record to support Dirago's claim that he was prejudiced by counsel's failure to file a such a brief to support a new trial.  Counsel cannot be expected to raise issues that are plainly frivolous and without merit.  Therefore, on this claim, the Court concludes that Dirago has failed to demonstrate ineffective assistance of trial counsel.

7.  *Cumulative Errors*

Dirago lastly asserts that the cumulative effect of trial counsel's errors deprived him of his right to due process and effective assistance of counsel.  This Court has concluded that each of the alleged errors by trial counsel were harmless. Moreover, a careful review of the record reveals that any errors made by trial counsel based on allegedly deficient performance were indeed harmless, even when cumulated.    Thus, Dirago has not demonstrated that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Accordingly, this ground for a writ of habeas corpus will be denied.

E.  Ineffective Assistance of Appellate Counsel

Dirago broadly asserts that his appellate counsel was ineffective for failing to raise the claims asserted in this petition on direct appeal.  The Court finds this claim baseless. Counsel did raise the jury voir dire issue on direct appeal, as well as the issue concerning the admission of "other crimes" evidence.  The Appellate Division determined that these claims had no merit.  Also, the claims asserting ineffective assistance

41

of trial counsel were appropriately raised, and denied, in Dirago's state PCR proceedings.  Generally, claims of ineffective assistance of trial counsel are not raised on direct appeal because it requires the appellate court to look beyond the bounds of the record and the evidence presented at trial.

Claims of ineffective assistance of appellate counsel are evaluated under the Strickland standard previously discussed. See Wright v. Vaughn, 2004 WL 1687865, *6, n.10 (E.D. Pa. July 26, 2004).  In order to prevail on a claim that appellate counsel was ineffective, Dirago must show that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there was a reasonable probability, but for counsel's deficiency in raising the arguments on appeal, that the conviction would have been reversed on appeal.  See Buehl v. Vaughn, 166 F.3d 163, 173-74 (3d Cir. 1999), cert. dismissed, 527 U.S. 1050 (1999).

Based on review of the record, this Court finds that Dirago fails to establish deficient performance by appellate counsel. He also fails to demonstrate how any alleged failure by appellate counsel would have had any reasonable potential for affecting the outcome of the appeal.  Therefore, this Court cannot conclude that the determination of this issue by the state courts resulted in a decision that was contrary to, or involved an unreasonable application or determination of law or fact.  Williams v. Taylor, supra.  This claim will be denied accordingly.

F.  Cumulative Errors

     Finally, Dirago asserts that the cumulative effect of the
alleged trial errors deprived him of his due process and his
constitutional right to a fair and impartial trial.

     Even if none of the claims on their own amounts to a
constitutional violation, the "cumulative effect of the alleged
errors may violate due process."  United States ex rel. Sullivan
v. Cuyler, 631 F.2d 14, 17 (3d Cir. 1980); see also Douglas v.
Hendricks, 236 F. Supp.2d 412, 436 (D.N.J. 2002) (Walls, J.) (no
cumulative error when the trial was fair and verdict supported by
sufficient evidence); Pursell v. Horn, 187 F. Supp.2d 260, 374
(W.D. Pa. 2002) ("That the reliability of a state criminal trial
can be substantially undermined by a series of events, none of
which individually amounts to a constitutional violation, is an
idea that has been accepted by nearly every federal court to have
addressed the issue.").[5]  In Marshall v. Hendricks, the Court of
Appeals for the Third Circuit evaluated a cumulative error claim
and found:

          Here, even were we to cumulate all the claimed errors
          and superimpose them over the extensive trial
          proceedings, given the quantity and quality of the
          totality of the evidence presented to the jury, we
          could not conclude that the New Jersey Supreme Court

_____

     [5]  Neither the Supreme Court nor the Court of Appeals for
the Third Circuit has established a standard by which a claim of
cumulative error must be determined.  See Pursell, 187 F. Supp.2d
at 374-76 (describing three alternative approaches).

unreasonably applied Supreme Court precedent or
unreasonably determined the facts in making its ruling.

See 307 F.3d 36, 94 (3d Cir. 2002), cert. denied, 538 U.S. 911
(2003).

This Court has determined that no errors occurred or that,
to the extent errors did occur, they were harmless.  A review of
the record reveals that any errors that may have occurred remain
harmless when cumulated, and that the trial was fair and the
verdict was supported by ample evidence.  As found in Marshall,
supra, Dirago has not demonstrated that the actions of the state
courts "resulted in a decision that was contrary to, or involved
an unreasonable application of, clearly established Federal law,
as determined by the Supreme Court of the United States," or
"resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in
the State court proceeding."  Accordingly, this ground for a writ
of habeas corpus will be denied.

V.  CERTIFICATE OF APPEALABILITY

This Court next must determine whether a certificate of
appealability should issue.  See Third Circuit Local Appellate
Rule 22.2.  The Court may issue a certificate of appealability
only if the petitioner "has made a substantial showing of the
denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For
the reasons discussed above, this Court's review of the claims
advanced by petitioner demonstrates that he has failed to make a

44

substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue.  Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For the above reasons, this Court finds that the § 2254 habeas petition should be denied on the merits and a certificate of appealability will not issue.  An appropriate Order follows.


s/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge

DATED:  November 17, 2005

45